(28 Misc. Rep. 396.)

### HOEY et al. v. HOEY.

(Supreme Court, Special Term, New York County. July, 1899.)

1. HUSBAND AND WIFE—CONVEYANCES—UNDUE INFLUENCE.
    The fact that a wife was devoted to her husband does not raise the presumption that she unduly influenced him in the execution of a conveyance to her.

2. SAME—PRESUMPTIONS.
    The fact that a wife, sued by her husband's heirs to set aside a conveyance by the husband to her as procured by undue influence, did not testify and explain what she had to do with the transaction, raises no presumption against her.

Action by Bridget Hoey and others against Helena G. Hoey to set aside a deed. Judgment for defendant.

C. J. Earley (T. J. O'Neill, of counsel), for plaintiffs.
Howe & Hummel (A. H. Hummel, of counsel), for defendant.

RUSSELL, J. Although the plaintiffs in this action, brought by the mother, sisters, nephews, and nieces of William Hoey, deceased, to set aside a conveyance of New York property by the deceased to

his wife, have placed in their complaint the charge alone that the deceased was of unsound mind and memory, and did not know that he was executing the deed, I have concluded to open up the case for a full review of the testimony upon the additional allegation of undue influence, because the evidence is all in, mainly without objection, which the plaintiffs can give upon that additional charge on which they relied also upon the trial, and also because the matter of undue influence is so closely tied to weakness of mind that it should be usually considered to possibly sustain an action to set aside transfers where the evidence would not justify a finding that the grantor was of unsound mind. The evidence of unsoundness is utterly insufficient to justify any court in transgressing the wishes and the right of action of the deceased grantor. Vagaries and eccentric conduct may tend to show mental disease, and, when coupled with proof of death by paresis, may be sufficient to justify the conclusion of imbecility. But each case is sui generis. What would be extreme evidence of incomprehensible conduct in a staid clergyman, doctor, lawyer, or editor might be very natural in one whose life was of jest and variety, and who devoted himself to the amusement of other people. William Hoey was evidently a man of rare and exuberant humor; his habitual study was to cultivate that sense, and attract others not only by his mimicry, but also by eccentricities which would cause his name to be exploited. His life was in one sense a continuous piece of acting, on and off the stage; and his acts and vagaries, hurtful to no one, save, perhaps, himself, were in unison with his habitual current of action. A year and a half elapsed from the execution of the deed to his death, and that death may have been very likely hastened, as also some of his eccentricities caused, by the freedom of convivial habits, which not only let down the restraint of strict decorum of manner, but also weakened the physical powers of a man living largely in the display of his own emotions. His residence at the sanitarium was so caused; and the evidence of the manager plainly shows that Hoey had a clear mind and understanding when he left that retreat. He could also act as well as ever after the deed was executed, repeating the lines not only of plays before committed, but also of new ones freshly learned.

Second. It does not need the citation of any authorities for the maintenance of the proposition that one, occupying a confidential relation to another, who receives a transfer of valuable property without consideration, should at the call of the grantor, or those succeeding him, give evidence tending to show the freedom of action of him who parted with his property. But the confidential relation here is that of the wife to the husband. At the common law she was supposed to be under his dominion, and not he under hers; and although at this latter day such an inference has been seriously modified by the force of stern facts, yet the presumption has not as yet entirely shifted to the shoulders of the wife. The counsel for the plaintiffs strenuously urge that, Mrs. Hoey being such a loyal, affectionate, and devoted wife, her influence was presumably greater than if the contrary had been true, and also that Hoey himself was conscious of failing powers. To whom, then, should a man, fearing

possibly his ability to properly deal with his own property in the not distant future, and perhaps apprehensive of early death, transfer that property, but to that same loyal, affectionate, and devoted wife? He had no children. There is a singular dearth of evidence, which is usual in such cases, of expressed desire to benefit his relatives; of what he had already done for those relatives; of any close intimacy with them, showing by inference a wish that they should share in his prosperity; or of the pecuniary necessities of those relatives whom he left behind. There was no apparent opportunity on the part of Mrs. Hoey to accomplish this transfer by dominating influence. He himself originated the plan when he was in Chicago and she was in New York. After the first conveyance appeared to have some defect in its execution, he persisted in sending a second deed to her. His letters show clearly that the conveyance was the result of the prompting of his own heart. He remained contented and happy after its execution for a year and a half, till his death. There is no room for the belief that any undue influence upon him procured the conveyance; but the inference is irresistible, if a man who accumulates property has the freedom to dispose of it as he will, that his sense of obligation to and affection for this faithful companion of his life rightly and justly determined the transfer. It is urged that it was the duty of Mrs. Hoey to go upon the witness stand, and explain just what she had to do with this transaction, and the omission to do so is a strong presumption against her. I do not well see how she could have testified to the events occurring in Chicago, she being 900 miles away; nor do I see how she would have been a competent witness to any transaction with her deceased husband, as against his heirs; and it may be observed that, if her testimony was important, it might have been easy for the plaintiffs to have called her to the stand, and possibly her testimony could have been given upon their questioning without any valid objection in her behalf of her own incompetency. Let the complaint be dismissed, with costs.

Complaint dismissed, with costs.